## THE CONTRACTORS TO REBUILD AND SUPPORT UNION WHARF AND PIER IN NEW-HAVEN *against* HEMINGWAY and others.

In 1732, the proprietors of undivided lands in *N. H.* granted to certain subscribers, their heirs and assigns, forever, full liberty to erect and maintain a wharf on the flats ; and at the same time, voted, that they would not allow any wharf to be erected within three rods on the *Eastern* side, and four on the *Western* side. In 1760, these subscribers were incorporated. A contract having been made by this company, with certain individuals to rebuild and extend the wharf, these contractors, together with the former stock-holders, were, in 1810, incorporated, under a new name, with all the rights and privileges of the old company. This association, in whatever form it has existed, has claimed and exercised the right to receive wharfage on all goods transported by water, and landed upon their wharf, or which were shipped therefrom, as well as from vessels lying there. A tariff of wharfage has existed from a period as early as 1746. In 1815, a new tariff, previously made out by the company, was confirmed, by an act of the General Assembly, in which was this item : " all goods landed

*New-Haven,*
July, 1837.

Union Wharf
Company
*v.*
Hemingway.

from or put on board of coasting vessels, to pay wharfage," &c.   In 1826, an arrangement was made between the *Wharf Company* and the *F. Canal Company,* by which the basin of the latter was to be connected with the wharf of the former; and it was also agreed, that the canal boats and goods transported up and down the canal within the basin, should be free from wharfage from said wharf, the *Canal Company* keeping in repair that side of such wharf which was enclosed within the basin; and it was also provided, that the powers and rights not especially granted should be retained by the *Wharf Company.* The basin was secured, by a wharf, running from the main land on the *East,* to the wharf of the *Wharf Company* on the *West.* This wharf and the wharf of the *Wharf Company* are free, open, public highways.  *H.* was the owner of packets running from *New-Haven* to *New-York,* and back, which came up and discharged at the basin wharf, more than three rods *East* from the wharf of the *Wharf Company;* and the goods thus landed upon basin wharf were transported across the other wharf, to the store of *H.,* on the *West* side thereof, or upon such wharf to the main land; and were, in like manner, transported and shipped, by means of the basin wharf, into said packets.  Held, that *H.* was liable to pay wharfage on such goods to the *Wharf Company.*  [One Judge dissenting.]

THIS was an action of *assumpsit* for the wharfage of goods; tried at *New-Haven, January* term, 1837, before *Church,* J.

In *December,* 1731, after the failure of a previous attempt, the proprietors of undivided lands in the town of *New-Haven,* at a legal meeting, granted to so many of such proprietors as should be inclined to subscribe for the purpose a certain sum of money, full and free liberty to erect, set up and maintain a wharf on the flats, thirty feet wide, of such course towards the main channel as should best answer the end proposed : *to have and to hold* to the said subscribers, their heirs and assigns forever.   At a meeting of such proprietors, in *December,* 1732, after referring to the preceding grant, it was *voted,* by the proprietors, that they would not allow any wharf to be erected within three rods on the *Eastern* side and four on the *Western* side, of said wharf.   An association was afterwards formed, and a wharf erected.   As early as the year 1746, a tariff of wharfage, established by the proprietors, is known to have existed.   In 1760, an act of incorporation was obtained, by the name of *The Union Wharf Company in New-Haven.*   In 1802, a contract was made, by this *Union Wharf Company,* with certain individuals, to rebuild and extend the wharf; and in 1810, the General Assembly incorporated the present company, under its present name, giving to the plaintiffs the rights and privileges of *The Union Wharf Company.*

The wharf has always been a free, open public highway, to pass and repass upon; but the company have claimed and exercised the right to receive wharfage on all goods transported by water and landed upon their wharf, or which were shipped therefrom, as well as from vessels lying there. In 1815, a tariff of wharfage, previously made out by the company, was confirmed, by an act of the General Assembly, in which was this item: "All goods landed from or put on board of coasting vessels to pay wharfage, &c." In 1822, the *Farmington Canal Company* were incorporated; and in 1826, being about to form a basin near the upper part of the plaintiffs' wharf, there was an arrangement made, by which it should be connected with such wharf; and it was thereby agreed, that the canal boats and goods transported up and down the canal within the basin, should be free from wharfage, from the plaintiffs' wharf; and the canal company were to keep in repair that side of the plaintiffs' wharf connected with, and enclosed within, the basin; and it was further provided, that all powers and rights not especially granted, should be retained by the plaintiffs. The grant of the flats upon which the basin was to be formed, was made upon condition that this agreement was ratified. The canal company then went on and formed their basin, and secured it, by a wharf running from *Tomlinson's* wharf on the *East*, to the plaintiffs' wharf on the *West*. This basin wharf was also used as a free public highway.

The defendants were owners of packets running from *New-Haven* to *New-York* and back; and also owned stores or ware-houses on the *West* side of the plaintiffs' wharf; and these packets came up and discharged at the basin wharf, more than three rods from the plaintiffs' wharf; and the goods thus landed upon basin wharf were transported across the plaintiffs' wharf to the defendants' store, or upon the plaintiffs' wharf to the main land; and were, in like manner, transported and shipped, by means of the basin wharf, into said packets.

On the trial, it was not claimed, that it made any difference as to the rights of the plaintiffs, whether the goods were brought to and from the defendants' store to the packets, or up and down the plaintiffs' wharf; as the plaintiffs had, for thirty years, claimed and exercised the right of collecting wharfage on all goods brought upon their wharf, by land, from any adjoining wharves and yards, or landed at said wharves and

*New-Haven, July, 1837.*

*Union Wharf Company v. Hemingway.*

New-Haven, yards, and carried up the plaintiffs' wharf; though the right
July, 1837. to wharfage on goods re-shipped without landing on the plain-
Union Wharf tiffs' wharf, had been a subject of litigation about the year
Company
v. 1814. It had been the usage for the packet owners to pay the
Hemingway. wharfage on goods landed from their packets, and those taken
on board of them. The defendants had paid wharfage on
these goods to the canal company, and were indemnified by
that company ; and now claimed, that they used the plaintiffs'
wharf in no other manner, than as a public highway ; and so
they could not be responsible to the plaintiffs for wharfage.

The court left to the jury the question whether the plaintiffs'
wharf had been used by the defendants, in any other manner
than as a public highway ; and whether the goods were land-
ed *bona fide* and without fraud upon the canal company, and
shipped, in like manner, on board the defendants' vessels. The
jury returned a verdict for the defendants; and the plaintiffs
moved for a new trial, claiming that, upon the facts admitted
and proved, they were entitled to recover.

*Baldwin* and *Kimberly*, in support of the motion, contend-
ed, 1. That the plaintiffs were entitled to wharfage under the
tariff established by the proprietors, and confirmed by the act
of the General Assembly in 1815. In the first place, the case
is within the *language* of the tariff: " All goods landed from
or put on board coasting vessels," &c. Secondly it is clearly
within the *spirit* of that provision. The benefit to the defend-
ants, and the injury to the plaintiffs are the same, as if the
goods were taken from or put on board of the vessel, at the
point of junction of the two wharves.

2. That the plaintiffs are entitled to wharfage, in the pres-
ent case, as a common right of charge for the use of their prop-
erty, independently of any legislative sanction. The proprie-
tors have always exercised the right of fixing and altering,
from time to time, the compensation to be paid by individuals,
who avail themselves of the accommodation afforded by the
wharf. They have always charged wharfage on goods
brought upon or carried from the wharf to or from a vessel at
anchor, at any distance therefrom ; also, for goods landed upon
the adjoining wharves, if carted up the wharf.

3. That the plaintiffs are not restricted in this right of
charge, by any thing contained in their original grant of the

flats, or otherwise. Such restriction is not within the language or the spirit of the grant ; and is palpably inconsistent with the manifest design of the parties. Nor are the plaintiffs restricted in this right of charge, by the junction of the basin wharf with the plaintiffs' wharf; nor by any act of the plaintiffs in relation thereto. Such effect was never contemplated, by either the wharf company, the canal company, or the proprietors of the flats. On the contrary, it is apparent, that the object contemplated by all parties, was a rim of a basin to hold water for the purposes of the canal ; a wharf, only for the convenience of transacting the appropriate business of the canal company. Certain exemptions from wharfage were made, by the parties, but this case does not come within the exemptions ; and to leave no doubt on this subject, all other rights are expressly reserved. The *consequences* of the defendants' claim, show it to be preposterous. The canal company had full knowledge of the practice of charging wharfage on goods landed on adjoining wharves, when they erected their basin wharf.

*Hitchcock* and *Townsend*, contra, remarked, that as there had been no contract in fact between the parties, and no evasion by the defendants, if the plaintiffs can recover, it must be, either by reason of their rights of property, or by virtue of the privileges granted them by the State. They then contended, 1. That the plaintiffs have no title or right to the basin wharf, where the goods for the wharfage of which the action is brought, were taken from and put on board the defendants' vessels. The basin wharf belongs to the canal company; it was built by them, pursuant to their charter, at their own expense, on flats granted for the purpose, by the proprietors. But whether the canal company have a perfect title or not, the plaintiffs have no right or title beyond three rods *East* of the *East* side of their wharf. See the grant of *December*, 1732. There is nothing in the nature or character of wharf property, which gives rights *beyond* the boundaries of the property.

2. That the goods, for the wharfage of which this action was brought, were not *landed at* or *shipped from* the plaintiffs' wharf; but at the basin wharf, and there only. *Landing* is a single act : it is the removing of the goods from the water on to the land; and when the goods are once on the

land, the landing is completed. So *shipping* is a single act: it is the removing of the goods from the land on to the water; and until they are on the water, they are not shipped. Any subsequent or prior act is *transportation ;* if on land, transportation by land ; if on water, transportation by water.

3. That no other use was made of the plaintiffs' wharf for the goods in question, than to transport them thereon, as one of the public highways in the town of *New-Haven.* This was claimed by the defendants, as a matter of fact, on the trial ; and the jury have found it accordingly. The goods were *landed on* or *shipped from* the basin wharf: they were *transported* on the plaintiffs' wharf from or to the basin wharf. The basin wharf itself is a free, public highway, by dedication. As soon as erected it was dedicated to the public, as a highway, by its owners, the canal company ; and the public accepted the dedication, by using it for the purpose.

4. That the plaintiffs have no right, under any of their grants from the state, to demand payment for the mere use of their wharf, as one of the public highways in the town of *New-Haven.* [Here the counsel went into an examination of the grants of 1760, 1801, 1810, 1815 and 1819.] The grant of 1815 is the important grant ; and from that source, if from any, the plaintiffs must derive the right claimed. But there is not a word in that grant, which gives the least countenance or plausibility to such a claim. It begins " WHARFAGE—*Long-Wharf, New-Haven.*" It then goes on to provide for three classes of cases. 1st, *Vessels.* That, of course, has no bearing on this case. 2nd, *Goods* landed on or shipped from *Long-Wharf.* But it has already been shewn, that the goods in question were never landed on or shipped from *that* wharf. 3rd, *Special Cases.* Of these, several are provided for ; but not one that in the least resembles the present. [The counsel examined them in order.] The plaintiffs, therefore, wholly failed to show any evidence in their grants, for the right which they claimed of imposing a toll on this free, public highway.

5. That the plaintiffs cannot charge for the use of their wharf as a public highway, on the ground of any *usage* proved in the case. The usage insisted upon is, in relation to the wharves and yards on the *West* side of *Union Wharf.* First, usage cannot be resorted to, except to explain the mean-

ing of provisions otherwise doubtful. 8 *Conn. Rep.* 575. 2 *Johns. Rep.* 362. 7 *Conn. Rep.* 470. It cannot *extend* the meaning of plain grants : it cannot give a corporation new powers or rights. But in this case, there is nothing doubtful to be explained. The grants of the plaintiffs are unequivocal, and clearly give no such right as is claimed. Secondly, the usage, in the cases insisted upon, was wholly different from the present case. It related to the *West* wharves and yards, erected under grants from the plaintiffs, and on their flats. Hence, the plaintiffs insisted, that they were *a part* of their own wharf, and subject to the same charge. The question was substantially as to the *boundaries* of the plaintiffs' wharf, having no bearing upon the present question. But there has been a usage from the first erection of the wharf, in cases precisely the same as the present; and that usage has been, that *no toll* has ever been paid. The wharf has been a public highway, without charge, for all the uses to which other public highways are put; and this usage, if any, ought to govern. Now, for the first time, do the plaintiffs come forward, and claim to restrict the use of their wharf as a public highway, and to take from it its free character.

WILLIAMS, Ch. J. Although the documents exhibited on the trial of the cause, are numerous, the dispute is within a very narrow compass. The jury, by their verdict, have negated the idea of any attempt of the defendants to evade the rights of the plaintiffs. The question, however, is really between the owners of the two wharves; the *Canal Company* having indemnified the defendants.

What then, are the respective rights of these companies? That the *Union* wharf is a free, open, public highway, is not denied. But the plaintiffs claim, that they have the right to demand compensation for all goods brought by water, which are landed upon, or pass over their wharf; and upon all goods transported over or shipped from their wharf: and this seems not to be denied, on the part of the defendants; but they claim, that as these goods were first landed upon or shipped from *Basin* wharf, and transported up or across the plaintiffs' wharf only as a public highway, therefore no wharfage can be demanded.

*New-Haven,*
July, 1837.

Union Wharf
Company
*v.*
Hemingway.

*New-Haven,*    To determine this, we must look back to the origin of this
*July, 1837.*  right of wharfage.    In the infant state of the town, it seems to
Union Wharf  have been an object of great solicitude, by the inhabitants, that
Company
*v.*      a wharf should be erected, by individuals, to aid the commerce
Hemingway.  of the town.    After several ineffectual efforts, the proprietors, in
1732, voted not to allow any wharf to be erected within three
rods of the *East* side of the proposed wharf, nor within four
rods of the *West* side; thus holding out to those, who would
embark in this enterprise, that if this wharf should become a
public highway, those who, by means of it, imported or ex-
ported their goods, should not be allowed the facilities of an-
other wharf, by which they could avoid a reasonable compensa-
tion for the expenses incurred in this then novel, but important
undertaking.    Soon after, and as we may fairly presume, in
consequence of this vote, the original wharf was erected.    Un-
der this grant, though the wharf became a public highway, yet
those who used it, to import or export goods, always paid a
compensation therefor, under the denomination of wharfage;
and it has not been denied but that, if goods imported were
landed at a pier, and then transported in a boat or on the ice,
to this wharf, and landed there, or transported over it, they
would have been subject to wharfage: and if another wharf
had been built four rods distant, and goods imported were land-
ed thereon, and then brought on to this wharf, upon the same
principle, they must have been subject to wharfage.    If such a
wharf had been extended to the main land, the owners of this
wharf could not complain, although it deprived them of much
of their profits; because they must have known originally,
that they were liable to this competition, and they were willing
to risk it.    But as this wharf was erected for the accommoda-
tion of the importers and shippers of goods, it is but reasonable
that those who used it for that purpose, should make compen-
sation therefor; and although the goods imported or shipped
might first rest upon a pier or upon the ice, or even another
wharf, yet if they were placed upon this wharf for the purpose
of reaching their place of destination, we think there is noth-
ing in the fact that they were first placed upon another wharf,
more than upon a pier or the ice, which would exempt them
from wharfage.    They obtained the very accommodation,
which this wharf was designed to give—a landing upon a
structure connected with the main land.    And when we con-

sider, that by the grant, no wharf was to be erected within four *New-Haven,*
*July,* 1837.

Union Wharf
Company
*v.*
Hemingway. rods of this, we think that goods brought from such a wharf to this, to be transported to their place of destination, may be fairly said to be landed upon this wharf, and so, in the strictest sense, subject to wharfage. Had there been no connexion between this wharf and the *Canal* wharf, these goods must have been brought in boats to the wharf of the plaintiffs, in which case, they would have been literally landed on their wharf, and would certainly have been subject to wharfage.

How then, is the case altered, by the arrangement made between the corporations? The *Canal Company* had no right to unite their wharf to the *Union* wharf, or to build within three rods of it, without the consent of the plaintiffs. An arrangement, however, was made; and it is immaterial at whose request; and that consent was given; but upon certain terms and conditions. One of these conditions was, that the side of the *Union* wharf enclosed within the basin, should be free from wharfage for canal boats, and all articles transported either up or down in them; and the *Union Wharf Company* retained to themselves all powers and rights not especially granted to the *Canal Company.*

The first-mentioned provision clearly shows what was intended to be granted, as it regards wharfage—an exemption from wharfage on goods brought down or carried up the canal and canal boats; not however upon all, but such only as should come or send their goods within the basin. How frivolous would this arrangement have been, if the claim of the defendants is admitted! How idle to provide, that goods coming down the canal might be free from wharfage, if all goods from any place, were to be free from wharfage!

If it should be said, that this exemption applies only to goods first landed upon *Union* wharf from the canal boats, it would deduct very little from the weight of the argument; for as these wharves were to be connected, whether the goods were first landed upon one or the other, would be a matter of trifling consequence in such an arrangement.

But further, the *Union Wharf Company,* after the exemption, which is the only thing said about wharfage, expressly *reserve all rights and privileges not expressly granted;* and as they had granted no exemption but the one before stated, all other rights to wharfage which they before had, remain

New-Haven, with that corporation. Had not this junction of the two
July, 1837. wharves been made, we have seen, that the plaintiffs would
Union Wharf have been entitled to wharfage, upon all goods landed, directly
Company
v. or indirectly, from a vessel upon their wharf, for the purpose of
Hemingway. arriving at their final destination, by means thereof; or upon
goods shipped therefrom, in a similar manner. If goods im-
ported have once been transported from a pier or wharf to the
main land, then they may be no more liable to wharfage, than
any other goods brought from the country, to the stores on the
wharf; but goods brought by water, and landed on or trans-
ported over the plaintiffs' wharf, for the place of their destina-
tion, cannot free themselves from wharfage, by resting upon a
pier, or the ice, or even another wharf. They cannot be said
to be landed, in the one case, more than in the other. The
*Canal Company*, when they took this grant from the *Union
Wharf Company*, must have understood, that nothing was in-
tended to be granted, but what was expressly granted; and
they then received a grant of the flats, upon which their wharf
and basin is founded, from the proprietors of the town, upon
the express stipulation, that this agreement between the *Union
Wharf Company* and the *Canal Company* be ratified. They
therefore agreed to build their wharf under these conditions and
stipulations. But by the claim now made, the *Union Wharf
Company* are not to retain the power and enjoy the privileges
they before did. The *Canal Company* are to take from them
all the business, which the space their wharf occupies will per-
mit, and at the same time, subject the wharf of the plaintiffs
to a great share of the damage incident to such business. Such
a construction of this contract, the court cannot accede to. We
consider it contrary to good faith; and contrary to the spirit of
the contract and the intent of the parties, who, at that time,
seemed desirous to guard the rights of the plaintiffs with great
care. As between these corporations, therefore, every principle
of law, as well as of justice, is in favour of the plaintiffs; and
this suit is in fact, though not in form, a suit between these
companies; for the defendants are indemnified by the *Canal
Company*.

It is true, however, that the defendants' indemnification may
fail; and they must have a right to be heard in their own de-
fence. How then do they stand? The plaintiffs would have
had a right to exact wharfage of them upon these goods so

placed upon their wharf, before the erection of the canal wharf. The defendants must, then, show how that right has been lost or varied; and for this purpose, they must rely upon the rights of the *Canal Company;* and if this company have no rights, as against the *Union Wharf Company,* to intercept their claim of wharfage, we do not see how the defendants can resist the claim. That they have paid their wharfage to the *Canal Company,* may evince what has been found by the jury, that there was no design to avoid wharfage; but it will not show, that the plaintiffs were not entitled to it. And if the plaintiffs would have been entitled to wharfage, aside from the intervention of the canal wharf, the defendants must show, that by means of that wharf, this right was lost. And when the very instrument under which the wharf was erected, shows, that the plaintiffs' right of wharfage was retained, it is not easy to see how the defendants can shelter themselves under it, more than the *Canal Company.*

To a majority of the court, then, it appears, that the plaintiffs, upon the facts admitted and proved in this case, are entitled to wharfage; and of course, there must be a new trial.

In this opinion BISSELL, HUNTINGTON and WAITE, Js. concurred.

CHURCH, J. dissented.

New trial to be granted.